Jeremy Pinson #16267-064
_____
Name and Prisoner/Booking Number

USP Tucson
_____
Place of Confinement

PO Box 24550
_____
Mailing Address

Tucson AZ 85734
_____
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

FILED _____ LODGED _____
RECEIVED _____ COPY _____

JUN 17 2020

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Jeremy Pinson
_____ ,
(Full Name of Plaintiff)

             Plaintiff,

v.

(1) United States of America ,
_____
(Full Name of Defendant)

(2) Federal Bureau of Prisons ,
_____

(3) Barbara von Blanckensee ,
_____

(4) C. Schuler ,
_____

             Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 20-cv-0070-RM
_____
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A.  JURISDICTION

1.    This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☒ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☒ Other: Federal Tort Claims Act, 28 U.S.C. 2671-80 .

2.    Institution/city where violation occurred: USP Tucson .

Revised 3/11/16                             1                         **550/555**

## B.  DEFENDANTS

1. Name of first Defendant: _United States of America_.  The first Defendant is employed
as: _U.S. Government_ at _USP Tucson_.
(Position and Title) (Institution)

2. Name of second Defendant: _Federal Bureau of Prisons_ The second Defendant is employed as:
as: _U.S. Agency_ at _USP Tucson_.
(Position and Title) (Institution)

3. Name of third Defendant: _Barbara von Blanckensee_.  The third Defendant is employed
as: _Complex Warden_ at _USP Tucson_.
(Position and Title) (Institution)

4. Name of fourth Defendant: _C. Schuler_.  The fourth Defendant is employed
as: _Nurse_ at _USP Tucson_.
(Position and Title) (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?  ☐ Yes   ☐ No

2. If yes, how many lawsuits have you filed? _About 200_.  Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _Pinson_ v. _United States_
      2. Court and case number: _18-CV-118 (M.D.Pa.)_.
      3. Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Settled_.

   b. Second prior lawsuit:
      1. Parties: _Pinson_ v. _DOJ et al_
      2. Court and case number: _19-CV-335 (D.Ariz.)_
      3. Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Pending_.

   c. Third prior lawsuit:
      1. Parties: _Pinson_ v. _Estrada_
      2. Court and case number: _18-CV-535 (D.Ariz.)_
      3. Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?) _Pending_.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D.  CAUSE OF ACTION

### COUNT I

1.  State the constitutional or other federal civil right that was violated:  Violation of the
FTCA  28  U.S.C.  2671-80                                                    .

2.  **Count I.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail              ☐ Access to the court      ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion     ☐ Retaliation
   ☐ Excessive force by an officer  ☒ Threat to safety  ☐ Other: _____.

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what
**each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without
citing legal authority or arguments.

The Bureau of Prisons ("BOP") took custody of a violent, manipulative
inmate named Schawn Cruze several years ago after a litany of violence
and misconduct (Attachments A+B). It designated him eventually to serve
his sentence in USP Tucson. The plaintiff, a transgender inmate, warned
USP Tucson staff in a PREA investigation begun Oct. 2, 2019 that Cruze was
threatening her. Plaintiff was released to the CHALLENGE program on Oct. 23,
2019 and was doing well until Cruze was released to general population on
Nov. 27, 2019. Cruze began making death threats to plaintiff who finally spoke to
SIS Cristinzio again about Cruze. Cristinzio promised to place Cruze in SHU
"immediately" but instead waited 2 hours during which time Cruze put a "contract
hit" on plaintiff through inmates who owed him money for drugs, those inmates were
Seelon and Smith and Dugard. Plaintiff was attacked by Dugard on Dec. 16, 2019.
She and Dugard were released from SHU Jan. 14, 2020 and then on Jan. 17, 2020
another inmate owing Cruze money for drugs named Oberfeldt attacked plaintiff on
Jan. 17, 2020 causing serious injury, at Cruze's direction, in an area of the prison
where officers were not at their post. Plaintiff warned staff that Dugard and
Oberfeldt were going to attack her yet they did nothing to protect her against BOP policy.

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
Concussion, Deviated Septum, bleeding, bruising, swelling of the face,
mental and emotional trauma.

5.  **Administrative Remedies:**
   a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at
       your institution?                                                  ☒ Yes      ☐ No
   b.  Did you submit a request for administrative relief on Count I?      ☒ Yes      ☐ No
   c.  Did you appeal your request for relief on Count I to the highest level?  ☒ Yes      ☐ No
   d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you
       did not.  _____
       _____

SF-95 is Attachment C

### COUNT II

1. State the constitutional or other federal civil right that was violated: Violation of 28 U.S.C.- 2671-80 (FTCA)

2. **Count II.** Identify the issue involved.  **Check only one.**  State additional issues in separate counts.
   ☐ Basic necessities        ☐ Mail              ☐ Access to the court    ☑ Medical care
   ☐ Disciplinary proceedings ☐ Property          ☐ Exercise of religion   ☐ Retaliation
   ☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____

3. **Supporting Facts.**  State as briefly as possible the FACTS supporting Count II.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

All supporting facts of Count I are reincorporated here.

Upon her return from the hospital on Jan-17, 2020 plaintiff was in severe pain. As she was being escorted to the SHU she informed defendant Schuler she was in severe pain and that the hospital discharged her with instructions to take pain medication. Schuler screamed at plaintiff "Yes fucking sued me and now you want pain meds? Fuck you." Plaintiff was never supplied pain medications from Schuler or any other medical staff and suffered in intense pain for 2 weeks, with nausea and vomiting for the concussion that went untreated. Schuler is an employee of BOP and the United States. Plaintiff was never seen by a medical doctor following the hospitalization to follow-up either.

4. **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
   See Count I, Sec. 4

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                                      ☑ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count II?                                   ☑ Yes   ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?                          ☑ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

SF-95 is Attachment D

4

## COUNT III

1.  State the constitutional or other federal civil right that was violated: Violation of the 1st Amendment, 5th Amendment and Privacy Act 5 U.S.C. 552a, 8th Amendment and 28 U.S.C. 2671-80

2.  **Count III.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☐ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☑ Retaliation
    - ☐ Excessive force by an officer
    - ☑ Threat to safety
    - ☐ Other: _____ .

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    See Pages 7 thru 20

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☐ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Count III?   ☐ Yes   ☐ No
    c.  Did you appeal your request for relief on Count III to the highest level?   ☐ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____ .

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

5

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

1. $1,000,000 against United States on Count I.

2. $25,000 against United States on Count II.

3. Damages against Blanckensee and Scholes to be determined at a jury trial.

4. Injunction on Count III enjoining BOP from (1) transferring plaintiff, (2) maintaining the false information described in Count III in BOP files, (3) using the false information described in Count III in housing or transfer decisions, (4) continuing to misuse PREA policies to retaliate against victims like plaintiff, (5) any such injunctive relief to remedy the alleged violations at the direction of the Court at the close of trial.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___6-11-20___
　　　　　　DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

COUNT III

~~[scribbled out]~~

~~[scribbled out]~~, Supporting Facts:

I declare under penalty of perjury the following is true:

1. Plaintiff Pinson is a resident of the State of Oklahoma and is sui generis. Although born male, plaintiff is transgender and self-identifies as female. Plaintiff goes by the name "Grace" in every day life.

2. Plaintiff has undergone hormone therapy and other treatments prior to and at all times relevant to the matters at issue herein. At all times relevant in this action, plaintiff has consistently self-identified and is in fact a member of the LGBTI community. It is a minority and oft-criticized class

3. Beginning in or about Feb. 15, 2018 plaintiff is confined in the all-male USP Tucson.

4. Pinson suffered previous sexual assault and rape in prior BOP facilities and has suffered recurring problems with sexual assault and victimization by fellow inmates because of Plaintiff's transgender status, which provoked plaintiff to file PREA complaints. Most were callously ignored or weaponized against plaintiff.

5. Despite the fact that it was subjectively known by the Bureau of Prisons ("BOP") that Pinson was subjectively at risk to be the victim of sexual abuse, BOP staff subjected plaintiff to continuing stress, anxiety, ongoing harassment, emotional trauma, physical harm, discrimination because of plaintiff's transgender status and outspoken nature.

6. The weaponization of plaintiff's victimization were knowing, deliberate, intentional, sadistic and motivated in whole or in part to retaliate against plaintiff.

7

7. It is common knowledge within the correctional community generally, at least since the enactment of the Prison Rape Elimination Act and surveys conducted under the Act, that transgender inmates at all-male facilities confront an alarming risk of sexual assault, rape, and discrimination. BOP staff at USP Tucson knew of policies and protocols prescribed by the Department of Justice and post-PREA yet were indifferent to the efforts by USP Tucson staff to weaponize that system to increase the risks toward, and discriminate against, transgender inmates.

8. The Congress enacted PREA in 2003 to establish the requirement for Zero Tolerance for acts of Sexual Abuse or Harassment in confinement facilities. 42 U.S.C. 15601 et seq. PREA acknowledges the obvious: rape or sexual abuse is an omnipresent threat in prisons — especially towards transgender inmates — of which correctional personnel know and need to prevent through prophylactic safeguards.

9. Additionally the U.S. Dept. of Justice and the BOP adopted Program Statement 5324.11, on January 06, 2014 entitled "Sexually Abusive Behavior Prevention and Intervention Program," the stated purpose of which, at Section 1 is: " to provide a written policy that implements zero tolerance toward all forms of... sexual abuse and sexual harassment."

10. In July 2015 the National Inmate Survey administered by the Bureau of Justice Statistics found that 35% of transgender inmates held in prison have experienced

one or more incidents of sexual assault in a one year period.

11. The survey collected the information directly from inmates and has been presented as an official DOJ report prepared pursuant to PREA dictates.

12. The survey was compiled using data collected anonymously from the nation's inmates from 2007-2012. More than 92,000 adult inmates participated. Of those, 232 inmates identified as transgender.

13. A 2009 study of sexual assault in California State prisons found that transgender inmates are 13 times more likely to be sexually assaulted than other prisoners.

14. The DOJ in its official position to the United States Supreme Court in Obergfell v. Hodges argued that any classifications based on sexual orientation are subject to a heightened constitutional scrutiny under the Equal Protection Clause.

15. Notwithstanding the acknowledged need for protection of transgender inmates against sexual predation, abuse, harassment or discrimination by BOP staff and other inmates, BOP staff at USP Tucson failed to comply or supervise compliance with existing policies, procedures, protocols or programs and failed to create additional protections for transgender inmates to carry out the Zero Tolerance Goal of PREA, DOJ/BOP standards, and Constitutional, Civil and Common Law mandates.

16. On May 17, 2018 plaintiff filed a PREA complaint against inmate Jorge Feliciano-Ortiz who was known to USP Tucson staff to be violent and predacious, when Ortiz grabbed plaintiff's breasts and rubbed his groin against her shoulder. Despite CCTV footage capturing the incident USP Tucson investigators J. Lawson and M. Herlich ruled the allegation "Unsubstantiated".

17. An "Unsubstantiated" PREA finding in BOP policy means an allegation with no supporting or corroborative evidence

18. Plaintiff's May 17, 2018 PREA complaint was supported by video footage and a second inmate witness. SIS staff routinely claimed at USP Tucson "if there's no DNA its unsubstantiated", which is not consistent with DOJ/BOP policies.

19. On July 18, 2018 plaintiff filed a PREA complaint against Joseph McDaniels, a convicted sexual predator, who attempted to coerce plaintiff into being "pimped for money".

20. When SIS J. Lawson interviewed plaintiff he angrily announced at the beginning "I'm getting tired of this shit Pinson, Man the fuck up." Lawson then proceeded to deem the allegation "Unfounded" despite a sworn witness statement and filed disciplinary charges against Plaintiff and added her to the "Posted Picture File" viewable to all USP Tucson staff for "making false PREA allegations."

10

21. An "Unfounded" determination in BOP/DOJ policy means an allegation that could not have happened.

22. The sworn statement is attached to this Complaint.

23. On April 5, 2019 plaintiff filed a PREA complaint that alleged Jacky Freeman, a convicted sexual predator, made inappropriate comments about Pinson's body, breasts, buttocks, and appearance in makeup.

24. The April 5, 2019 allegation was again investigated by J. Lawson who interviewed plaintiff and stated "I'm gonna move Freeman, but one day we're gonna screw you even worse." Freeman was moved to a different housing unit but the allegation was ruled "Unsubstantiated" by Lawson again.

25. On April 20, 2019 plaintiff was punched in the face by inmate Rufus Hall. Both plaintiff and Hall were placed in SHU. During the near month-long investigative and disciplinary process SIS officials J. Lawson and J. Uhring began falsely telling other USP Tucson inmates that plaintiff filed a "PREA Complaint" on Hall. This caused animosity toward plaintiff.

26. Following release from SHU, in May 2019, SIS J. Uhring again placed plaintiff in SHU and paid two inmates a common prison currency (postage stamps) to falsely claim plaintiff threatened to kill a prison psychologist and as a result on June 17, 2019 plaintiff was put in the SHU.

11

27. On July 12, 2019 despite prior victimizations the plaintiff was housed with Ricki Mahkimetas, another convicted sexual predator, who violently beat and tried to rape Pinson.

28. Despite ample evidence from plaintiff and others, the BOP ruled the complaint "Unsubstantiated", released Mahkimetas to general population, and added this incident to the false June 17, 2019 allegation to seek Pinson's transfer out of USP Tucson.

29. While still in the SHU pending 2 transfer requests related to the June 17, 2019 and July 12, 2019 reports, plaintiff on Oct. 2, 2019 filed a PREA complaint on inmate Darnell Brown.

30. Inmate Brown was in SHU for violently attacking a transgender inmate named Dustin Sharp (now Destini Brown, legally) and had been recommended for transfer when he began sexually harrassing plaintiff.

31. During staff interviews, plaintiff and others detailed Brown's behavior and sexual harrassment. Plaintiff also detailed threats she was receiving from Schawn Cruze. SIS staff again ruled the complaint to be "Unsubstantiated" and recommended plaintiff be transferred.

32. On Oct. 17, 2019 during an interview with her psychologist Samantha Licata plaintiff sought a PREA investigation into Anthony Ruffin who was harrassing and threatening plaintiff.

33. During the interview plaintiff complained of staff continually finding her PREA complaints to be "Unsubstantiated" and was told "the Reality is that if staff find these complaints to be substantiated it makes our institution look terrible, so they have to rule that way or the Execs risk their jobs."

34. The Oct. 17, 2019 allegation was again ruled to be "Unsubstantiated" and was once again recommending Plaintiff's transfer.

35. On Oct. 23, 2019 as part of the settlement of Pinson v. United States, No. 18-cv-118 (M.D. Pa.) plaintiff was released from SHU to the Challenge Program.

36. Plaintiff was complying with all facets of the Program and was enjoying her freedom from SHU.

37. Despite having reported the threats of inmate Schawn Cruze during the Oct. 2, 2019 investigation the BOP released inmate Cruze to general population at USP Tucson, on Nov. 27, 2019.

38. On Dec. 14, 2019 plaintiff reported threats she was receiving from Cruze to Lt. Eastman and SIS Cristinzio when she refused to help Cruze introduce drugs into USP Tucson.

39. Cruze followed up on his Oct. 2019 threats and paid inmate Billy Dugard to assault plaintiff.

40. Inmate Dugard laid in wait, unauthorized, in the USP Tucson dining hall for plaintiff to arrive and then attacked Plaintiff unprovoked by striking her with closed fists in the head and upper torso.

41. Responding staff to the fight included Officer T. Schneider who laughed, clapped his hands, and loudly proclaimed "Fuck Yeah, they got her" while escorting plaintiff out of the dining hall.

42. An investigation was conducted into the Dec. 16, 2019 incident by SIS J. Espinoza and Calvillo who agreed that Dugard was paid to attack Pinson and stated "We've been trying to get Cruze for a long time." They recommended plaintiff released from SHU.

43. A false "Fighting" charge against Plaintiff for the Dec. 16, 2019 incident was expunged as completely false.

44. Plaintiff and Dugard were both released from SHU on Jan. 14, 2020 and Dugard apologized to plaintiff.

45. On Jan. 17, 2020 plaintiff was attacked again by inmate Oberfelt, and hospitalized.

48. Investigation into the Jan. 17, 2020 incident was conducted by SIS Francisco Shirley who at the outset of his interview stated "Everyone is asking me to help get rid of you why do they hate you so much in the Wardens Office?"

14

49. SIS Shirley acknowledged plaintiff was assaulted due to inmate Cruze paying Oberfeldt to assault Plaintiff for monetary gain, in his report but then falsely added Pinson was facing animosity from the "white, non-sex offender" population which he said "to help the Warden get rid of you," and again recommended her transfer.

50. On March 30, 2020 Warden Barbara Blanckensee submitted a request to BOP's "Transgender Executive Council" seeking Plaintiff's transfer.

51. In the March 30, 2020 Memo, submitted pursuant to Program Statement 5200.04, Warden Blanckensee made a number of false and misleading statements.

52. The March 30 memo characterized Plaintiff as a "serious management problem" who does "not follow the instructions of his unit team" and who could not complete the CHALLENGE Program "due to his egregious behavior resulting in multiple investigations and SHU placements."

53. The memo omits that plaintiff was the victim in the May 17, 2018 – July 18, 2018 – April 5, 2019 – April 20, 2019 – June 17, 2019 – July 12, 2019 – Oct. 2, 2019 – October 12, 2019 – December 16, 2019 and Jan. 17, 2020 incidents being investigation.

54. The memo falsely tells Central Office that plaintiff was "the aggressor" despite official findings that

the disciplinary charges levied against her July 12, 2019
Dec. 16, 2019 were expunged because she was the
innocent victim.

55. The memo falsely accuses plaintiff of threatening staff
on June 17, 2019.

56. The memo omits that multiple inmates claimed staff
bribed them to make false allegations against Pinson
June 17, 2019 and that Pinson's attorneys reported such
to the Office of Inspector General for investigation.

57. The Warden falsely wrote letters to members of
Congress that plaintiff "will be released to general
population once it is safe for her," while internally
seeking to transfer her on the basis set forth herein:
false and distorted claims.

58. Warden Blanckensee met with plaintiff in SHU on
Jan. 24, 2020; Feb. 18, 2020; March 5, 2020; March
11, 2020; March 26, 2020; May 28, 2020. And on
each occasion lied to plaintiff about her SHU status
knowing she was lying to the Transgender Executive
Council in an effort to secure Pinson's transfer.

59. In a "Request For Transfer" submitted by Blanckensee
to John O'Brien, Chief of the Designation and
Sentence Computation Center dated Mar. 30, 2020
Blanckensee repeated the lies in her Memo to the
Transgender Executive Council and included false
claims about plaintiff's past.

16

60. Blanckensee, sadly, is not the only BOP staff member telling lies to secure Pinson's transfer. In a deposition in Pinson v. Samuels, No. 12-cv-1872 (D.D.C.) the former Chief of the Designation and Sentence Computation Center falsely testified that plaintiff threw boiling water in a female nurses face, an incident that simply never happened, but was used in a punitive transfer decision.

61. On March 2, 2020 plaintiff was taken to a private interview where she stated BOP's Central Office felt pressured by Blanckensee to transfer plaintiff and warned that BOP was looking to punitively transfer plaintiff to long-term segregation units in Allenwood, PA or Atlanta, GA over the lawsuits. She added "they really want to silence you."

62. On Feb. 25, 2020 Dr. James Hayden, the USP Tucson Chief Psychologist, told plaintiff that SIS and Blanckensee were going to weaponize a court filing to transfer plaintiff and on Blanckensee's March 30, 2020 Memo and Request For Transfer the court filing was in fact used as a reason for transfer.

63. The BOP is fully aware of the dangers inmates face when transferred from USP Tucson. In another lawsuit in this court Smith v. Shartle, No. 18-cv-327 (D. Ariz.) attorneys for the Estate of a murdered USP Tucson inmate outlines how USP Tucson inmates

17

have been assaulted or killed, due to the stigma USP
Tucson possesses, when departing from this facility
which houses sex offenders, former law enforcement,
and high profile inmates.

64. Plaintiff possesses numerous affidavits from USP
Tucson who claim they were threatened with a
transfer if they "fired on staff."

65. Blanckensee's hostility towards LGBTI inmates was
demonstrated early in her arriving to USP Tucson
when she cancelled an annual LGBTI Pride Event
in June 2019 which had been held for years
prior to her arrival, and which attracted hundreds
of inmates, including non-LGBT, to celebrate Pride
Month and to provide LGBT and non-LGBT inmates
to educate one another and form bonds of acceptance.

66. The BOP continues to create conditions at USP Tucson
that are anti-LGBTI. For example, Officers
Vasquez, Dukett, Disbrow, Wade, Schneider, Kurtz,
Carey, Shaw, Kaslan, regularly, daily, and loudly
use terms such as "faggot" when doing rounds
in the SHU.

67. In one meeting with Associate Warden Prileau
transgender inmates asked him "What are you going
do when officers call us faggots?" to which he
replied "Nothing. If they call you faggots its
because you are."

18

68. The USP Tucson SIS Office, where certain employees mentioned herein are assigned, has a history of employing liars. One individual pled guilty to felony count of perjury and he was the head of the USP Tucson SIS Office. See: United States v. Mendez, No. CR-18-00260-TUC-JAS (D.Ariz, Doc. 46).

69. Courts across the nation agree that the BOP is very dangerous for transgender inmates. See e.g. United States v. D.W., 198 F.Supp 3d 18 (E.D.N.Y. 2016).

70. Multiple lawsuits by transgender inmates against the BOP have been filed. See e.g. Leibelson v. Collins, No. 15-CV-12863 (S.D.W.Va. 2017); Shorter v. United States, No. 17-CV-8911 (D.N.J. 2018); Johnson v. Kruse, No. 17-CV-237 (S.D.Ill. 2017); One such lawsuit details in graphic details how BOP uses the PREA complaint process to harass, degrade, humiliate BOP inmates who file PREA complaints. See: Beaubrun et al. v. United States, No. 19-CV-615-TJC (M.D.Fla. 2019). The BOP is well aware it has a problem. But where BOP lawyers strenuously fight against inmate PREA complaints and lawsuits, The New York Times and Miami Herald recently reported that BOP settled a similar lawsuit brought by female staff quickly to the tune of $20,000,000.00 to avoid a trial on sexual abuse in the BOP.

19

71. Additionally in Jan. 2019 a U.S. House of Representatives Report detailed how in the BOP sexual abusers are protected, promoted and allowed to escape discipline while the victims are routinely retaliated against, humiliated and harassed.

72. The BOP's attorneys were also present for an October 2019 deposition wherein plaintiff testified about the retaliation, including the 2019 congressional report.

73. This is an old problem for the BOP, in the landmark case defining deliberate indifference, a transgender inmate named Dee Farmer, the U.S. Supreme Court discussed the failure to protect her. See Farmer v. Brennan, 511 U.S. 825 (1994).

74. The custom and practice at USP Tucson of protecting sexual abusers, and punishing victims by virtue of retaliatory transfers and efforts to discredit, demean, degrade and humiliate victims fosters a culture of abuse and fear of reprisal in the USP Tucson LGBTI community.

75. Inmates Smith, Dygard, Oberfeldt, Seeton apologized to plaintiff upon Cruze's transfer.

Executed pursuant to 28 U.S.C. 1746.

Jeremy Pinson

20