Attachment B

FILED
JULY 10, 2018
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| JOHNATHAN O. JOHNS, individually, and DAVID W. LYNCH and JENNIFER LYNCH, husband and wife,<br><br>             Respondents,<br><br>   v.<br><br>STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS and COYOTE RIDGE CORRECTION CENTER,<br><br>             Petitioner. | No. 35140-8-III<br><br>UNPUBLISHED OPINION |

KORSMO, J. — The Washington Department of Corrections (DOC) obtained discretionary review of the trial court's refusal to grant its motion for summary judgment under the immunity provisions of the Washington Industrial Insurance Act (IIA). Concluding that DOC was immune from this suit by two of its corrections officers, we reverse and remand the case with instructions to dismiss.

## FACTS

Plaintiffs Johnathan Johns and David Lynch worked as corrections officers at the Coyote Ridge Correction Center (CRCC) at the time of the incident giving rise to this litigation. Inmates Schawn Cruze and David Kopp were cell mates at CRCC. Kopp, 22

No. 35140-8-III
*Johns v. State*

at the time, was serving a 240 month sentence for second degree murder. Cruze was serving a term of life in prison following a 1997 persistent offender sentence. Cruze was transferred to CRCC in August, 2012, after an infraction-filled institutional career that had worn out his welcome in the state's close custody and maximum custody facilities.[1] CRCC corrections officers were warned the day after Cruze's arrival that they should be careful around him and that CRCC was "the 'last stop' for this offender."

On the morning of September 11, 2012, Cruze and Kopp were notified by authorities at CRCC that they would no longer be cell mates and were being assigned that day to new quarters with new cell mates. The information was not well received by either man, although Mr. Cruze claimed credit for instigating the ensuing troubles.

To express their displeasure with the imminent reassignment, Cruze grabbed a wooden-handled mop and a plastic-handled brush from an unlocked broom closet. He gave the mop to Kopp. As the two men walked past a workstation in one of the prison's common rooms, they turned and started hitting Corrections Officer Johnathan Johns with

---

[1] Mr. Cruze could not be housed at the Clallam Bay Corrections Center, Stafford Creek Corrections Center, or the Washington State Penitentiary because he had "compromised" staff members by entering into relationships with married staffers whose spouses also worked at the facility. In light of the Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301-30309, Mr. Cruze was considered a victim of those relationships. The relationships were not counted among his infraction history. Other institutions barred him due to previous threats of violence he had made against staff members.

No. 35140-8-III
*Johns v. State*

their instruments. Johns, who had been working on paperwork at the station before the sneak attack, received blows to his back and the sides of his head.[2]

Johns was forced to retreat backwards into a hallway, pursued by the two inmates. Other officers rallied to his assistance. Officer Nicholas Rutz arrived first and began struggling with Cruze while Johns fought with Kopp. Sergeant David Lynch arrived and attempted to aid Rutz. Cruze hit Lynch several times in the face. Sufficient reinforcements arrived to subdue the inmates and put an end to the altercation.

Cruze later stated that the incident occurred because he was upset about the short notice change to his cell assignment and his fear that he might be placed with a child molester. He claimed that his anger was directed at the supervisor in charge of cell assignments, Peter Caples, and that Mr. Johns was simply the "wrong guy at the wrong time."

Johns and Lynch filed this suit against DOC, claiming that the IIA immunity did not extend to this incident because DOC had deliberately injured them by placing Cruze at CRCC. Accordingly, discovery and much of the subsequent argument focused on the process by which Cruze ended up at the institution.

DOC uses a point system to determine the type of custody that applies to an inmate. When evaluated at the end of his stay at the Monroe Correctional Complex,

---

[2] The initial assault, and much of the ensuing altercation, was captured on a video recording. The video was provided to the trial court and is part of the record of this appeal.

3

No. 35140-8-III
*Johns v. State*

Cruze received a score of 37, a figure that normally required that he be placed at a close custody institution. Needing to move Cruze from the Monroe facility, DOC decided to try CRCC. In order to do so, DOC management overrode his score and raised it to 40, a figure that allowed him to be placed at CRCC.

After discovery, DOC moved for summary judgment of dismissal based on its IIA immunity. The trial court denied the motion and also denied reconsideration, determining that there were factual questions related to the override decision that needed to be resolved at trial. DOC sought discretionary review from this court. Our commissioner granted review after concluding that the trial court probably erred in its ruling.

A panel heard oral argument.

## ANALYSIS

Although DOC raises multiple issues, we need only consider one aspect of the immunity argument.[3] The evidence in this record does not establish that DOC acted with the deliberate intent to injure when it placed Cruze at CRCC.

In any appeal from a summary judgment ruling, this court engages in de novo review; our inquiry is the same as the trial court's inquiry. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view the facts, and all reasonable inferences to be

---

[3] In light of our disposition, the facts and trial court rulings related to the other issues presented by this review need not be discussed.

4

No. 35140-8-III
*Johns v. State*

drawn from them, in the light most favorable to the nonmoving party. *Id.* If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.*; *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

The IIA provides various benefits to injured workers depending on the particular circumstances of each case and is the exclusive remedy for workers who are injured during the course of their employment. *Wash. Ins. Guar. Ass'n v. Dep't of Labor & Indus.*, 122 Wn.2d 527, 530, 859 P.2d 592 (1993); RCW 51.04.010. Thus, the IIA precludes tort claims arising out of an injury that is compensable under the IIA. *Id.* However:

> If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

RCW 51.24.020.

The "deliberate intention" standard was authoritatively construed in *Birklid v. Boeing Co.*, 127 Wn.2d 853, 865, 904 P.2d 278 (1995). In that case, Boeing had rejected proposed remedial measures and continued to assign employees to work in a fabrication room with formaldehyde resin despite knowledge that the workers repeatedly were getting ill. *Id.* at 856. Determining that the deliberate intention exception applied to those facts, the court held: "the phrase 'deliberate intention' in RCW 51.24.020 means

5

No. 35140-8-III
*Johns v. State*

the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." *Id.* at 865. This two-prong test for deliberate intention reflected the narrow interpretation historically given to the statute. *Id.*

Subsequent cases have emphasized the narrowness of the *Birklid* test. The first ("certainty") prong can be met only when continued injury is *certain* to occur. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 32, 109 P.3d 805 (2005). The second ("willful disregard") prong of the test requires a showing that the employer deliberately intended to injure the employee. The intention, however, must relate to the injury, not to the act causing the injury. *Garibay v. Advanced Silicon Materials, Inc.*, 139 Wn. App. 231, 236, 159 P.3d 494 (2007).

*Vallandigham* is an instructive case. There, a severely disabled special education student repeatedly injured two teachers designated to work with him. The teachers sued the school district under the deliberate intention exception to the IIA. 154 Wn.2d at 19-26. The plaintiffs alleged that during the course of one school year, the disabled student had injured students or staff on 96 different occasions. *Id.* at 24. The trial court dismissed the case at summary judgment. *Id.* at 25.

Ultimately, the Washington Supreme Court affirmed that ruling. In doing so, the court emphasized that "the first prong of the *Birklid* test can be met in only very limited circumstances where continued injury is not only substantially certain but *certain* to occur." *Id.* at 32. The court concluded that a special needs child's behavior is "far from

6

No. 35140-8-III
*Johns v. State*

predictable," making it impossible to know with certainty whether violent behavior—even if frequent—"would not cease as quickly as it began." *Id.* at 33. Substantial certainty of injury is insufficient to satisfy the test. *Id.* at 36.[4]

With these cases in mind, it is clear that DOC's conduct in sending Cruze to an institution that was not designed to provide the close custody that he needed does not satisfy the deliberate intention exception as understood in *Birklid*. There was no certainty that Cruze would act out, let alone that he would do so by assailing corrections officers. Even more so than the special needs student in *Vallandigham* or the psychiatric patients in *Brame v. W. State Hosp.*, 136 Wn. App. 740, 150 P.3d 637 (2007), an inmate in a correctional center exercises volitional control over his actions. A human actor's behavior simply does not follow immutable laws of chemistry such as the formaldehyde resin at issue in *Birklid* did. Even if DOC had believed Cruze would act out against corrections officers at CRCC when he was transferred there, there still was no certainty

---

[4] This court reached a similar conclusion in *Brame v. W. State Hosp.*, 136 Wn. App. 740, 150 P.3d 637 (2007). There, employees of a state psychiatric hospital had suffered injuries after repeated assaults by hospital patients. *Id.* at 744-745. The employees sued, arguing that the hospital knew with certainty that patients would assault staff and it willfully disregarded this knowledge. *Id.* at 748-749. Relying on *Vallandigham*, this court found that the foreseeability of assaults did not establish deliberate intention to injure the employees; patient behavior was too unpredictable to find certainty. *Id.* at 749.

No. 35140-8-III
*Johns v. State*

that he would do so. The respondents were unable to satisfy the first prong of the *Birklid* deliberate exception test.[5]

Accordingly, the trial court erred in rejecting DOC's motion for summary judgment. DOC was immune from this suit.

Reversed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

---

[5] In light of this conclusion, we need not address the arguments concerning the second ("willful disregard") prong of the *Birklid* test.

8