United States District Court
District of Arizona

Jeremy Pinson,
v.
USA et al.

No. 20-cv-00070-RM

## Motion For A Preliminary Injunction or TRO

Comes now the plaintiff pro se, pursuant to 28 U.S.C. and Fed. R. Civ. P. 65(a) and (b).

### I. Introduction:

This motion seeks to enjoin discriminatory and the unlawful retaliation plaintiff is enduring at USP Tucson.

### II. Relevant Facts

The plaintiff is a transgender female (Ex. 1, Pinson Decl. at 1) housed in USP Tucson. (id.). Her transfers within the Bureau of Prisons are governed by the Transgender Offender Manual (Ex. 2, Program Statement 5200.04). An inmate attacked plaintiff Jan. 17 (Ex. 1) as a result of being paid by another inmate, Schawn Cruze, to do so. (id.) Cruze had a lengthy history of violence (Ex's. 9, 10), and had previously target plaintiff (Ex. 1) but has since been relocated to the Washington Dept. of Corrections (id.) which enabled plaintiff to communicate with fellow inmates

1

to eliminate the threat to her (id.). Despite this, BOP personnel at USP Tucson submitted a transfer request (Ex. ) and accompanying Memo to the Transgender Executive Council ("TEC") (Ex. 3) containing numerous falsehoods and knowing distortions. (Ex. 1). Staff recruited inmates to lie on plaintiff, wrote fake and false disciplinary charges (Ex. 4) (also Ex. 1) and continue to keep her in unconstitutional conditions (Ex's. 5, 6, 1, 8). There is a history of this (Ex. 7, 8).

A. Standard of Review

There are 4 factors for obtaining a preliminary injunction. See Winter v. Natural Resources Defense Council Inc., 129 S.Ct. 365, 374 (2008). All four are addressed in this motion. The Ninth Circuit has held a plaintiff must show "the existence of serious questions going to the merits and the balance of ~~hardships~~ hardships tipping in" her "favor." Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th Cir. 2005).

B. Likelihood of Success on the Merits

Likelihood of success means "better than negligible chance of succeeding." Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

As far back as 1994 the BOP has been accused of endangering the lives of transgender inmates. See: Farmer v. Brennan, 511 U.S. 825 (1994). But 1994 is not where it ended, and such retaliatory endangerment has pervaded

2

the BOP in accusations by its staff (Ex. 7) by the plaintiff (Ex. 4) and other BOP inmates (see e.g. Wolf Guts v. County, No. 19-cv-442-DCB; Vanaman v. McLaughlin, No. 17-cv-446-JGZ; Lancaster v. Unknown, 19-cv-543-RCC; Jonassen v. USA, No. 13-cv-792-DCB; Garrett v. Diaz, No. 12-cv-890-JGZ; Davenport v. Rhodes, No. 18-cv-249-RM; Muller v. USA, No. 18-cv-376-RCC; Wright v. Shartle, No. 16-cv-4227-RM; Cobb v. Rhodes, No. 18-cv-460-RCC; Fabricant v. DOJ, No. 13-cv-562-JAS) (all District of Arizona) and USP Tucson staff have been convicted of perjury in their conduct at USP Tucson. See: United States v. Mendez, No. 18-CR-00260-JAS (D. Ariz.). In fact, BOP retaliation is at the core of a class-action lawsuit accusing BOP of harrassing, segregating and transferring female inmates who were sexually abused by BOP staff (as opposed to female staff who were paid $20,000,000.00 almost immediately to settle the case). See e.g. Beaubrun et al. v. United States, No. 19-cv-00615-TJC (M.D. Fla.).

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech in." Pratt v. Rowland, 770 F. Supp. 1399, 1406 (N.D. Cal. 1991) (granting injunction). Similarly DOJ regulations prohibit retaliation against PREA complainants, See e.g. 28 CFR Part 115, as does BOP policy, See: Program Statement 5324.12

It is likely beyond dispute that the plaintiff is a

3

tenacious individual who has made ample use of the First Amendment. This Court has noted her litigiousness (Doc. 7 at 1). Thus the question of the 1st element of retaliation is met.

The second question, does a nexus exist between the protected act and the adverse action, is answerable on the face of BOP's own documents (see Exhibits 3    , noting plaintiff's words in Court pleadings and history of PREA Complaints as part basis for transfer) but circumstantial evidence are the numerous and sustained lawsuits by USP Tucson inmates and BOP inmates and staff elsewhere (see Page    herein) alleging chronic retaliation, harrassment and abuse. The nexus is obvious.

The third question, the "adverse action" is also an easy one to answer. The plaintiff and her attacker were both placed in SHU on Jan. 17, 2020 (Ex. 1). Her attacker was shortly thereafter released to general population despite this being his second assault upon a transgender inmate. (Ex. 1). In her very first post-assault interview days after the attack, investigator Francisco Shirley began the interview stating "The Warden and them have been begging me to help get you out of Tucson." (Ex. 1) When asked "Why?" by the plaintiff, Shirley stated "all these lawsuits, they will do anything to get you shipped." (id.). The investigators report written on Jan. 23, 2020 recommended plaintiff and Schawn Cruze be made separatees, and her

4

attacker disciplined, which led to the Transfer request. (Ex. 1, 8) (also see: Pinson v. Blanckensee, No. 20-cv-00071 at Doc. 13 at 5). Instead of submitting a transfer, the BOP officials at USP Tucson began lying. They told the plaintiff they were sympathetic to her victimization and would return to general population when it was safe (see Ex. 6). They told a federal judge overseeing a dispute of a settlement the same. (see Ex. 1 at 14) (also Doc. 57 in M.D.Pa. Case No. 18-cv-118). They told U.S. Senator Kyrsten Sinema and Martha McSally both that she would be released to general population (see Ex. 1 at 13,6). Then on March 30, 2020 defendant Blanckensee formally sought plaintiff's transfer (Ex. 3), that request is notable for what it says, such as:

1. Blanckensee describes plaintiff's behavior as "egregious behavior resulting in multiple investigations and repetitive SHU placements" (id. at Sec. 3).

   A. The "investigations" referred to by plaintiff's transfer request were 6 PREA allegations where plaintiff was a victim of sexual abuse, two incidents where plaintiff was assaulted and was the victim, an incident of "fighting" where Blanckensee omits that the investigation concluded plaintiff was cleared to return to general population, and two investigations for threatening staff which resulted in the BOP Central Office denying transfer and releasing her to the USP CHALLENGE Program (Ex. 3).

5

The final investigation Blankensee referenced by her claimed "Pinson was the aggressor resulting in another inmates protective custody request." (id. at Sec. 3) also omits that investigators concluded the inmate in question, whose name is Spiotto, had "No evidence was found to support the rumors or claim of a hit on inmate Spiotto or a threat existing to his safety in general population of USP Tucson from any inmate, to include inmate Pinson." (see (Doc. 13-5, Page 8 of 9, in Case No. 20-CV-00071-RM)(D.Ariz)).

In sum, defendant Blankensee in attempting to secure plaintiffs transfer at best mischaracterized and distorted facts for the purpose of desperately securing a transfer, or at worst intentionally lied to the BOP's D.S.C.C. Chief and Transgender Executive Council by omitting a multitude of facts to support the "egregious behavior" narrative. The Spiotto investigation is particularly deceitful as it labels plaintiff "aggressor" in an investigation that concluded "no evidence" supported a runaway rumor. But ignoring the "no evidence" conclusion of her investigators, Blankensee chose to persist anyways in falsely painting plaintiff as an "agressor" knowing it wasn't true.

Blankensee also omits that only one of the "repetitive SHU placements" was due to an actual disciplinary charge, whereas all of the other SHU

placements were the result of bogus investigations that led to transfers Central Office rejected (Ex. 3) not "egregious behavior" by plaintiff.

2. Another theme in Blanckensee's transfer request is to exploit a letter to the U.S. Court of Appeals in Washington, D.C. immediately following the Jan. 17, 2020 assault. (See Doc. 13-5, Page 8 of 9 in Case No. 20-CV-00071-RM (D.Ariz.)). Blanckensee omits however that the BOP itself formally opposed plaintiff's assertion in the letter, and the Court sided with the BOP (See Exhibit 1 at 5), yet in an attempt to weaponize plaintiff's words, again, she distorts facts to support her false narrative to secure a transfer. To the Court of Appeals BOP lawyers argued the plaintiff was <u>not</u> in imminent danger, while internally defendant Blanckensee sough to support her false transfer narrative by using plaintiff's words to argue "Pinson's letter to the Court indicating a viable threat exists toward him" knowing that BOP lawyers were arguing the <u>exact</u> <u>opposite</u> in that Court case.

3. Blanckensee went on to continue lies of omission by telling transfer officials "Pinson stated he has animosity toward the inmate that placed a hit on him." (Ex. 3) Knowing that plaintiff actually

7

said "As far as inmate Cruze goes, I guess I have animosity towards him as long as he has animosity towards me." (Again see Doc. 13 at Page 5 in Case No. 20-cv-00071-RM (D.Ariz.)) The plaintiff wanted peace and to be left alone, yet Blanckensee used her words totally out of context by intentional ommission to deceive BOP transfer officials.

4. Finally, the evidence shows white non-sex offenders in fact harbored no animosity towards Pinson at all (see Exhibits of fellow inmates in 20-cv-169 and 20-cv-302).

The fact that defendant Blanckensee intentionally made a transfer request to other BOP officials using false or grossly distorted statements shows that she acted both dishonestly and manipulatively. She lied to them, she lied to the plaintiff, she lied to Judge Rambo about execution of the settlement in that case, she used BOP Attorneys to lie to the federal appeals court judges in Washington D.C., and misled this Court about plaintiff in Case No. 20-cv-0071-RM. But these lies had a different adverse impact on plaintiff as well, it has kept her in horrendously unconstitutional conditions in the USP Tucson SHU.

Being in the SHU is an unpleasant experience for

8

any prison inmate, but for the plaintiff her time in the defendant Blanckensee's SHU amidst a global COVID-19 pandemic meant conditions that presented an atypical and significant hardship:

1. While for the most part USP Tucson general population inmates receive out-of-cell exercise daily, the plaintiff has not received out-of-cell exercise since April 3, 2020 (see Ex. 5) and no out-of-cell time at all. (id). The Ninth Circuit Court of Appeals has held that an hour daily is the Constitutional minimum. See e.g. Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008)(declining to terminate requirement of two hours weekly noting most courts have required five to seven hours weekly). (also Ex. 1).

2. The plaintiff has no access to a television or radio for mental and emotional stimulus. She also can't receive books or magazines by mail, including legal and religious ones. (Ex. 1 at 4, 5).

3. Her present confinement is indefinite in duration and has already lasted 7 months which some courts have ruled is already unconstitutional. See: Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2002); Koch v. Lewis, 216 F.Supp.2d 994, 1000-01 (D.Ariz. 2001).

4. Her sentence ends in 2026, she is restricted from all telephone calls until 2028. Thus, plaintiff can neither

call her family, nor anyone else either. Courts have said prisoners have a right to telephone access. See e.g. Johnson v. State of California, 207 F.3d 650, 656 (9th Cir. 2000). (Ex-1)

5. Plaintiff has no access to visits, social or legal, at all (Ex.1)

6. The plaintiff cannot purchase stamps due to a combination of PLRA debts and BOP debts, and is not provided them by the BOP, as a result she cannot send outgoing mail without selling other inmates her meals for stamps. This is unconstitutional. See Morrison v. Hall, 261 F.3d 896, 906 (9th Cir. 2001). (Ex.1)

7. Although the plaintiff has sought work, she has been consistently denied the SHU Orderly job because of anger at her over her litigation (see Ex.1) which is unconstitutional. See DeWalt v. Carter, 224 F.3d 607, 618-19 (7th Cir. 2000); Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991). (Ex.1)

8. She cannot buy food or hygeine items in SHU. (Ex.1)

9. She cannot buy an MP3 player. (Ex.1)

10. She cannot use the law library daily, only 1x monthly.

11. She cannot participate in drug abuse or any rehabilitation programs. (Ex.1)

By contrast General Population inmates receive multiple hours out of cell activity daily, have 24 hour daily access to televisions, radios, MP3 players, books and magazines by U.S. Mail, outgoing mail. They have

10

weekly access to food and hygeine on the commissary, 300 500 minutes per month of free telephone calls, daily access to the law library (totalling 60 hours a month law library access), work and programming opportunities, and other privileges.

The plaintiff asserts in their totality, these conditions she is being subjected to as a result of a false and misleading transfer request by defendant Blanckensee are unconstitutional. See e.g. Trobaugh v. Hall, 176 F.3d 1087, 1088 (8th Cir. 1999)(three days of isolation for persisting in pursuing grievances conceded to violate First Amendment); Toolaprashad v. Bureau of Prisons, 286 F.3d 576, 585 (D.C. Cir. 2002)(BOP's transfer of inmate to a prison more distant); Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985)(exclusion from programs); Walker v. Thompson, 288 F.3d 1005, 1008-09 (7th Cir. 2002)(denial of out-of-cell exercise);

Thus plaintiff has clearly demonstrated that the facts of this case, and relevant case law, demonstrate a "better than negligible chance of succeeding", the definition of likelihood of success on the merits. Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

C. Balance of Hardships

Here, the balance of hardships favors the plaintiff.

11

The plaintiff's hardships are clear, defendant Blanckensee used a legitimate investigation following an assault upon the plaintiff to achieve an illegitimate result: indefinite placement of plaintiff in SHU under harsh and unconstitutional conditions pending a transfer submitted under false and misleading reasons.

The only hardship to defendants will be to face an unpleasant fact, defendants lied to and misled redesignation officials to rid themselves of the plaintiff.

The balance favors plaintiff. Duran v. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986); Stringer-El v. Nix, 945 F.2d 1015 (8th Cir. 1991)(requiring release from unlawful segregation).

D. Irreparable Harm

The law says that the continuing deprivation of constitutional rights is itself irreparable harm. See e.g. Elrod v. Burns, 427 U.S. 347, 373 (1976). Put differently, the BOP is attempting to transfer plaintiff to USP Atlanta, a facility so infamous for abuse of inmates that the Eleventh Circuit in 2010 and later 2014 refused to dismiss an LGBT inmates lawsuit seeking to enjoin BOP from ever returning him to that prison finding, inter alia, that an injunction was possibly warranted. See Doe v. Wooten, 376 F. Appx. 883 (11th Cir. 2010). Worse than

that fate however, is the means of transport: this retaliatory transfer would entail plaintiff being forced by armed escorts to be taken to an airport, loaded into a packed aircraft without social distancing, flown to multiple airports to pick up and discharge passengers, processed in a transfer center with hundreds of inmates, then made to repeat this process days later in the midst of the COVID-19 pandemic. The plaintiff is obese and asthmatic, she could easily die. Plaintiff could never be made whole if prison officials were allowed to cause her death or debilitation following a false, misleading transfer request, later on by an award of damages. See e.g. Arrington v. Daniels, 516 F.3d 1106, 1116 (9th Cir. 2008)(striking down BOP policies); Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1231-32 (10th Cir. 2005).

E. Public Interest

Protecting constitutional rights is always in the public interest. See e.g. Edmo v. Corizon Inc., 935 F.3d 757 (9th Cir. 2019)(affirming injunction protecting transgender inmates' rights). Here, the facts support an injunction as well. Media accounts make clear the public is interested in retaliation and abuse on the basis of gender in the BOP. (See Ex. 7). In this case, a

federal employee seeks to spend thousands of taxpayer dollars, in the middle of a global pandemic, to risk the lives of plaintiff and numerous BOP staff in the process, so she can secure plaintiff's transfer on the basis of a transfer request that was for the most part false and misleading. The public deserves that taxpayer dollars not be spent on spiteful actions where federal officials falsify government document simply to achieve a dangerous and vindictive result. On March 26, 2020 the President of the United States declared a national emergency, 4 days later defendants submitted a transfer request they knew to be false to exploit that emergency to harm plaintiff. The public interest is clear.

## Conclusion

Defendant Blanckensee has discriminated, and retaliated, against Plaintiff. The appropriate remedy is to enjoin this conduct. As the consequences of her lies stem directly from the Jan. 23, 2020 investigation and March 30, 2020 transfer request, the plaintiff seeks a preliminary injunction enjoining the BOP's continued housing of plaintiff in the USP Tucson SHU on what are at their core falsified agency records.

Jeremy Pinson

Certificate of Service

I certify service upon AUSA McCallum via U.S. Mail on 8-18-20, this Motion.

Jeremy Pinson