SKC

1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9  | Jeremy Pinson,                          No.  CV 20-0070-TUC-RM

10 |                     Plaintiff,

11 | v.                                       **ORDER**

12 | United States of America, et al.,

13 |                     Defendants.

14

15  Plaintiff Jeremy Pinson, who is currently confined in the United States Penitentiary

16 ("USP")-Coleman in Coleman, Florida, brought this civil rights action pursuant to *Bivens*

17 *v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the

18 Federal Tort Claims Act ("FTCA"), and the Privacy Act.  Defendants move for summary

19 judgment based on failure to exhaust available administrative remedies.   (Doc. 34.)

20 Plaintiff was informed of her rights and obligations to respond pursuant to *Rand v.*

21 *Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 37), and she opposes the

22 Motion.   (Doc. 42.)[1]   Also Pending is Plaintiff's Motion for Limited Discovery and

23 Supplemental Briefing (Doc. 46).

24  The Court will grant in part and deny in part the Motion for Summary Judgment,

25 lift the stay on discovery in this action,[2] and deny Plaintiff's Motion for Limited Discovery.

26

27  [1] Plaintiff is transgender and uses feminine pronouns.

28  [2] Discovery on the merits is currently stayed in this action pending resolution of
Defendants' Motion for Summary Judgment based on failure to exhaust.

# I. Background

In her three-count First Amended Complaint, Plaintiff asserts the following claims: in Counts One and Two, FTCA claims against Defendant the United States, and in Count Three, federal constitutional and Privacy Act claims against Defendants USP-Tucson Complex Warden Barbara von Blanckensee, Nurse C. Schuler, and the United States Bureau of Prisons ("BOP").

In Count One, Plaintiff relevantly alleges that, on October 2, 2019, during a Prison Rape Elimination Act ("PREA") investigation, Plaintiff told USP-Tucson staff that a violent prisoner, Schawn Cruze, was threatening her. (Doc. 15 at 3.)[3] On October 23, 2019, Plaintiff was placed in the Challenge Program and was doing well until November 27, 2019, when Cruze was placed in the general population and began making death threats against Plaintiff. (*Id.*) Plaintiff spoke to "SIS" Cristinzio about this, and Cristinzio promised to immediately place Cruze in the special housing unit ("SHU"), but instead waited two hours, during which time Cruze placed a "contract hit" on Plaintiff with prisoners Seeton, Smith, and Dugard, who owed Cruze money for drugs. (*Id.*) On December 16, 2019, Plaintiff was attacked by Dugard, and both Plaintiff and Dugard were placed in the SHU until January 14, 2020. (*Id.*) On January 17, 2020, after being released from the SHU, Plaintiff was attacked and seriously injured by prisoner Oberfeldt, who also owed Cruze money for drugs, when officers were not on their post. (*Id.*) Plaintiff warned prison staff that Dugard and Oberfeldt were going to attack her, but staff did nothing to protect her. (*Id.*) As a result, Plaintiff suffered a concussion, deviated septum, bleeding, bruising, swelling of the face, and mental and emotional trauma. (*Id.*)

In Count Two, Plaintiff relevantly alleges that on January 17, 2020, following her assault that same day, she was released from the hospital in severe pain, and she informed Defendant Schuler while being escorted to the SHU that the hospital had discharged her with instructions to take pain medication. (*Id.* at 4.) Defendant Schuler yelled and cursed

---

[3] Record citations herein refer to the page numbers generated by the Court's electronic filing system.

at Plaintiff for requesting pain medication and did not give her any pain medication or access to medical staff.  (*Id.*)  For two weeks, Plaintiff suffered intense pain and nausea with vomiting due to her concussion, which was left untreated, and she was not seen by a medical doctor for proper follow-up care.  (*Id.*)

In Count Three, Plaintiff relevantly alleged that, due to her transgender status, she has repeatedly been sexually assaulted and raped in BOP facilities.  (*Id.* at 7.)  In February 2018, she was confined at the all-male USP-Tucson facility.  (*Id.*)  Between May 2018 and January 17, 2020, she was the victim of at least 10 attacks that prompted her to file PREA complaints, which USP-Tucson investigators investigated but found to be unsubstantiated. (*Id.* at 10−15.)  On March 30, 2020, Defendant von Blanckensee submitted a memo to the BOP Transgender Executive Council ("TEC") in which she made a number of false statements and characterized Plaintiff as a "serious management problem" who does "not follow the instructions of his unit team" and could not complete the Challenge Program; she also stated that Plaintiff's "egregious behavior" had resulted in multiple investigations and SHU placements.  (*Id.* at 14−15.)  The memo left out that Plaintiff had been the victim of multiple attacks and also falsely stated that Plaintiff had been the aggressor, despite the charges against Plaintiff on July 12, 2019 and December 16, 2019 being expunged based on official findings that Plaintiff had been the "innocent victim."  (*Id.* at 15−16.)  The memo also left out that multiple prisoners claimed that staff bribed them to make false allegations against Plaintiff.  (*Id.* at 16.)  Also on March 30, 2020, von Blanckensee submitted a "Request for Transfer," in which she repeated the falsehoods in her memo and used one of Plaintiff's court filings as a reason for the transfer.  (*Id.* at 16−17.)  According to Plaintiff, USP-Tucson has a custom of protecting sexual abusers and retaliating against victims, creating a culture of abuse and fear of reprisal in the LGBTI community.  (*Id.* at 20.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that, liberally construed, Plaintiff stated FTCA claims against Defendant the United States in Counts One and Two and Fifth Amendment due process and equal protection claims for injunctive

1    relief against Defendant von Blanckensee and a Privacy Act Claim against the BOP in

2    Count Three.  (Doc. 14.)  The Court directed these Defendants to answer these claims and

3    dismissed the remaining claims and Defendants.  (*Id.*)

4    **II.    Legal Standards**

5        **A.    Summary Judgment**

6        A court must grant summary judgment "if the movant shows that there is no genuine

7    dispute as to any material fact and the movant is entitled to judgment as a matter of law."

8    Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The

9    movant bears the initial responsibility of presenting the basis for its motion and identifying

10   those portions of the record, together with affidavits, if any, that it believes demonstrate

11   the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

12       If the movant fails to carry its initial burden of production, the nonmovant need not

13   produce anything.  *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102-03

14   (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the

15   nonmovant to demonstrate the existence of a factual dispute and show (1) that the fact in

16   contention is material, i.e., a fact that might affect the outcome of the suit under the

17   governing law, and (2) that the dispute is genuine, i.e., the evidence is such that a

18   reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*,

19   477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216,

20   1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact

21   conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-

22   89 (1968); however, it must "come forward with specific facts showing that there is a

23   genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

24   587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

25       At summary judgment, the judge's function is not to weigh the evidence and

26   determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*,

27   477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw

28

all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

**B.    Exhaustion**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust "available" administrative remedies before filing an action in federal court.  *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005).  The prisoner must complete the administrative review process in accordance with the applicable rules.  *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it.  *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process).  Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  The ultimate burden, however, rests with the defendant.  *Id.*  Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust.  *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).  If a court concludes that a prisoner failed to exhaust, the proper remedy is dismissal without prejudice.  *See Jones v. Bock*, 549 U.S. 199, 223– 24 (2007); *Lira v. Herrera*, 427 F.3d 1164, 1175– 76 (9th Cir. 2005).

If the defendants move for summary judgment for failure to exhaust and the evidence shows that the plaintiff did, in fact, exhaust all available administrative remedies, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on

the issue.  *See Albino*, 747 F.3d at 1176 (pro se prisoner did not cross-move for summary judgment on issue of exhaustion, but because he would have succeeded had he made such a motion, sua sponte grant of summary judgment was appropriate).

### C.      Exhaustion under the FTCA

Prior to initiating a FTCA lawsuit in federal court, an individual must first "exhaust" her administrative remedies.  28 U.S.C. § 2675(a) (stating, "an action shall not be instituted upon a claim against the United States for money damages" unless the claimant has *first* exhausted administrative remedies); *see also D.L. by & through Junio v. Vassilev*, 858 F.3d 1244 (9th Cir. 2017) (stating that exhaustion of administrative remedies is required prior to filing an FTCA claim in district court).  In order to properly exhaust, a claimant must file her claims with the appropriate federal agency and either 1) receive "a conclusive denial of the claim from the agency," or 2) wait "for six months to elapse"  without a final decision from the agency regarding her claims.  *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011).  The exhaustion requirement is jurisdictional, meaning a district court does not have subject matter jurisdiction unless the exhaustion requirement is met.  Furthermore, "[b]ecause the requirement is jurisdictional, it 'must be strictly adhered to.'"  *Brady v. United States,* 211 F.3d 499, 502 (9th Cir.2000) (quoting *Jerves v. United States,* 966 F.2d 517, 521 (9th Cir.1992)).

## III.    Defendants' Failure to Comply with Federal and Local Rules

As an initial matter, Defendants failed to comply with Federal and Local Rules of Civil Procedure for setting forth the relevant facts required to show a failure to exhaust. Nowhere in their Statement of Facts or summary judgment briefing do they delineate the required steps of the BOP's administrative remedy process, identify the relevant grievance documents used in that process, relate the grievances Plaintiff filed in this action to the steps in that process, or even set forth how prisoners—including Plaintiff—are made aware of the BOP's administrative remedy requirements.   The Court has therefore had to independently search for and set forth the relevant facts pertaining to the BOP's administrative remedy process based on Defendants' declaration evidence and other

attachments to their summary judgment Motion, as required to determine whether Plaintiff both (1) had administrative remedies available to him, and (2) complied with the required steps to exhaust his available administrative remedies in this action.

Defendants should be aware, especially when moving for summary judgment on failure to exhaust, that it is not the Court's responsibility to attempt to glean relevant facts about the BOP's administrative remedy process or how prisoners are made aware of that process that Defendants fail to set forth in their Statement of Facts, discuss in their Motion, or support with specific citations to the evidence.  *See Orr v. Bank of America*, 285 F.3d 764, 775 (9th Cir. 2002) (internal quotation omitted) ("Judges need not paw over the files without assistance from the parties."); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (citation omitted).[4]

## IV.   Facts Relevant to Exhaustion

### A.   The BOP's Administrative Remedy Process

The BOP has an Administrative Remedy Process, set forth in C.F.R. §§ 542.10−19, which is designed to allow prisoners to seek formal review of any issues related to their confinement.  (Doc. 35-1 (Mitchell Decl.) ¶ 7.)  Upon arrival at USP-Tucson, prisoners are provided an Inmate Admission and Orientation Handbook ("the Handbook"), which describes the Administrative Remedy Process.  (*Id.* ¶ 11.)  This information is also available to USP-Tucson prisoners in the main law library and in the electronic law library

---

[4] This is not the first time that the Court has reminded defense counsel for USP-Tucson defendants of their obligations to set forth relevant evidence, including the steps of the BOP's administrative remedy process, when moving for summary judgment based on failure to exhaust. *See also Barnes v. Shartle*, CV 18-00491-TUC-CKJ, Doc. 115 at 5, n.4. Defense counsel is again reminded of their obligation to comply with the federal and local rules of procedure.  The Court may consider imposing sanctions if counsel fails to comply with the applicable rules in the future.  *See* LRCiv 83.1(f)(1)(A) (after notice and reasonable opportunity to be heard, the Court may impose sanctions upon the party, attorney, or law firm who without just cause fails to conform to the Federal Rules of Civil Procedure or Local Rules of Practice for the District or any order of the Court).

in the SHU.  (*Id.*)  On February 15, 2018, Plaintiff signed an acknowledgement that she had received the Handbook.  (*Id.* ¶ 12.)

According to the Handbook, the first step of the Administrative Remedy Process is for the prisoner to attempt an Informal Resolution, using the appropriate Informal Resolution form, which can be obtained from the prisoner's assigned Correctional Counselor or a Unit Team member.  (Doc. 35-6 at 4.)  If the issue cannot be resolved informally, the prisoner may file a formal complaint, using a Request for Administrative Remedy, commonly referred to as a BP-9, which she must submit to the Correctional Counselor to deliver to the Administrative Remedy Coordinator.  (*Id.*)  The prisoner has 20 days from the date the basis for her complaint occurred to file a BP-9, and prison staff have 20 days from receipt of the BP-9 to act on the complaint and provide the prisoner a written response from the Warden.  (*Id.*)

If the prisoner is not satisfied with the Warden's response to her BP-9, she may appeal to the Regional Director by filing a Regional Administrative Remedy Appeal, commonly referred to as a BP-10, which must be received in the Regional Office within 20 calendar days from the date of the BP-9 response.  (*Id.* at 4−5.)[5]  The filing must include copies of the BP-9, the Warden's response, and any exhibits.  (*Id.* at 5.)

If the prisoner is not satisfied with the Regional Director's response, she may appeal to the General Counsel in the Central Office by filing a Central Office Administrative Remedy Appeal, commonly referred to as a BP-11, to which she must attach copies of the underlying BP-9, BP-10, the responses, and any exhibits.  (*Id.*)  The Central Office Appeal must be answered within 40 calendar days.  (*Id.*)

When filing a BP-9, BP-10, or BP-11, the prisoner must include (1) a statement of facts, (2) grounds for relief, and (3) relief requested.  (*Id.*)

---

[5] This provision assumes the prisoner has control over when the appeal is "received" and conflicts with the corresponding provision set forth in the C.F.R, which states that, if the prisoner is not satisfied with the Warden's BP-9 response, she "may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15

For issues a prisoner believes are sensitive in nature, such that she would be adversely affected if the issue became known in the institution, the prisoner may file a complaint directly to the Regional Director and must include, in writing, the reason why she believes the complaint is sensitive.  (*Id.*)  If the Regional Director agrees that the complaint is sensitive, it will be processed.  (*Id.*)  If the Regional Director does not agree, the prisoner will be informed in writing of that determination, the complaint will be returned, and the prisoner may then pursue the issue by filing a BP-9 at the institution.  (*Id.*)

If a complaint is determined to be an emergency that threatens the prisoner's health or welfare, the reply must be made as early as possible, usually within 72 hours of receipt.  (*Id.*)

The Handbook refers prisoners to Program Statement 1330.16, *Administrative Remedy Program*, for more detailed instructions about using the Administrative Remedy Process.  (*Id.*)[6]

### B.    Plaintiff's Administrative Remedies

On July 24, 2020, Plaintiff filed a BP-9 at the institution level in which she complained that USP-Tucson staff, including Defendant von Blanckensee, allegedly lied to her about her transfer status and had made false statements about Plaintiff in letters to U.S. Senators, in a "memo to the TEC," and in a transfer request for Plaintiff.  (Doc. 35-1 (Mitchell Decl.) ¶ 16; Doc. 35-9 at 3.)

On September 1, 2020, Defendant von Blanckensee issued a written response, stating that the BOP takes staff misconduct seriously and would investigate Plaintiff's complaints, but due to Privacy Act protections for personnel actions, Plaintiff would not be provided further information.  (Doc. 35-9 at 2.)  Plaintiff was notified that, if she was not satisfied with this response, she could appeal to the Regional Administrative Remedy

---

[6] It is not clear from Defendants' facts whether prisoners receive copies of or have library or other access to Program Statement 1330.16 or to the BOP's administrative remedy process as set forth in the C.F.R.  The Court has therefore only included the facts about the BOP's Administrative Remedy process that are set forth in the Handbook.

1  Coordinator within 20 days, and she was given the address for the BOP Western Regional
2  Office in Stockton, California to submit her appeal.  (*Id.*)

3        On September 4, 2020, Plaintiff submitted another BP-9 at the institution level in
4  which she stated that she had recently acquired unredacted copies of the "TEC Memo" and
5  transfer request, and she complained that they contained "numerous false statements,"
6  including that Plaintiff was an "aggressor" and was unable to complete the USP-Tucson
7  Challenge Program due to "egregious behavior," even though the reason Plaintiff could not
8  finish the program was because she had been the victim of an assault.  (Doc. 35-10 at 3.)
9  Plaintiff also alleged that USP-Tucson staff "feloniously violate[d] federal law regarding
10  intentional falsification of government documents," and she sought to have these allegedly
11  false documents expunged from agency files "as violative of the Privacy Act."  (*Id.*)

12        On September 22, 2020, Defendant von Blanckensee issued a written response to
13  this BP-9, stating that a review of the investigations and threat assessments in Plaintiff's
14  records found no error.  (Doc. 35-10 at 2.)   The response also stated that Plaintiff's
15  allegations of staff misconduct would be reviewed, but Plaintiff would not be provided
16  further information, and Plaintiff was informed of her right to appeal to the Western
17  Regional Director.  (*Id.*)

18        An 81-page print-out of Plaintiff's grievance records, which lists every
19  administrative remedy Plaintiff has filed within the BOP up to February 5, 2021, shows
20  that, on October 22, 2020, the Western Regional Office received a BP-10 from Plaintiff
21  regarding "TEC memo[,] false documents, & request to expunge," and, on November 23,
22  2020, Plaintiff received a response denying her requests for relief.  (Doc. 35-1 (Mitchell
23  Decl.) ¶¶ 13, 19; Doc. 35-8 at 82.)  Under BOP policy, Plaintiff had 30 days to appeal this
24  response to the Central Office General Counsel via a BP−11, but Plaintiff's grievance
25  records do not show that she did so.  (Doc. 35-8 at 83.)

26        According to the declaration of BOP Legal Assistant Lorri Mitchell, who has access
27  to records of all administrative remedies filed within the BOP, the above administrative
28  remedies are the only ones Plaintiff filed since January 1, 2020 that relate to her claims

against Defendants in the First Amended Complaint, including her claims against Defendant von Blanckensee for allegedly making false statements about Plaintiff in her March 30, 2020 TEC memo and transfer request.  (Doc. 35-1 (Mitchell Decl.) ¶¶ 14−15.)

## C.    Plaintiff's FTCA Administrative Remedies

On January 21, 2020, Plaintiff filed a "Claim for Damage, Injury, or Death" (Standard Form 95 ("SF-95")) with the BOP based on her alleged assaults by other prisoners on December 16, 2019 and January 17, 2020.  (Doc. 35-2 at 2.)  As the basis of this claim, Plaintiff wrote, in full:

> On January 14, 2020 Schawn Cruze was allowed to send a "kite" placing a "hit" on me with Billy Dugard who had victimized me Dec. 16th and so then on Jan. 17, 2020 while I stood waiting to go to my job in the Psychology Dept. I/M Dugard escorted I/M Obergfeldt to my location where Obergfeldt violently attacked me resulting in my placement in the SHU and hospitalization.

(*Id.*)   With respect to injuries, Plaintiff claimed that she had suffered "contusions, concussion, deviated septum, bruising, lacerations, severe pain, [and] mental and emotional trauma," and she requested $600,000 in damages based on personal injury.  (*Id.*) The SF-95 was stamped as received on January 27, 2020.  (*Id.*)

On January 30, 2020, the BOP issued a written response to Plaintiff, denying Plaintiff's claim because she had not alleged injuries due to any "negligent or wrongful act or omission of any employee of the agency while acting within the scope of his or her office or employment, for which the United States is liable."  (Doc. 35-3 at 2.)   The response also stated that the "Administrative Remedy Program allows for formal review of an issue related to any aspect of your confinement and is the proper avenue for your condition and confinement complaint(s)" and directed Plaintiff to contact her Unit Team and to utilize the Administrative Remedy Procedure.  (*Id.*)   The response stated that if Plaintiff was not satisfied with this determination, she had six months from the mailing of the response "to bring suit in the appropriate United States District Court."  (*Id.*)   It also stated that Plaintiff could seek reconsideration by resubmitting her claim.  (*Id.*)

On January 24, 2020, Plaintiff submitted another SF-95 with the BOP, complaining about Nurse Schuler's failure to provide proper pain relief and medical treatment to Plaintiff.  As the basis of this claim, Plaintiff wrote, in full:

> Upon my return from the Tucson Medical Center 1-17-20 Nurse Schuler was asked by Lt. Falconer to provide my prescribed medications and pain medication for injuries sustained earlier that day in an assault.  Schuler refused, no one in USP Tucson Health Services was willing to examine or treat my painful injuries on that date or any date thereafter.

(Doc. 35-4 at 2.)  Plaintiff requested $ 25,000 for personal injuries, including severe pain and suffering from having her injuries go untreated.  (*Id.*)  The SF-95 was stamped as received on January 27, 2020.  (*Id.*)

On March 31, 2020, the BOP issued a written response to this SF-95, denying Plaintiff's claim on the grounds that its own investigation "fail[ed] to disclose any evidence of negligence or other conduct for which the United States is liable" and that Plaintiff had "failed to establish that [she] sustained a loss or personal injury as a result of staff negligence in this matter."  (Doc. 35-5 at 2.)  The denial letter stated that if Plaintiff was not satisfied with this determination, she had six months from the date the letter was mailed to file suit in the appropriate United States District Court.  (*Id.*)  Plaintiff attached a copy of this response to her First Amended Complaint.  (Doc. 15-4 at 2.)

## V.    Discussion

### A.    Counts One and Two: Plaintiff's FTCA Claims

Defendants argue that Plaintiff failed to exhaust her FTCA claims in Counts One and Two because she failed to provide sufficient facts in either of her SF-95s to satisfy § 2675(a) of the FTCA or to fully apprise the BOP of the FTCA claims brought against it in this action.  (Doc. 34 at 6−7.)

Section 2675(a) of the FTCA states, in relevant part, that

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while

1

2

3

> acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

4

5

6

7

8

28 U.S.C. § 2675(a).  In interpreting this requirement, the Ninth Circuit has explained that "section 2675(a) requires the claimant or his legal representative to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Blair v. I.R.S.*, 304 F.3d 861, 868 (9th Cir. 2002)

9

10

11

12

13

14

15

16

17

18

19

20

21

Defendants argue that Plaintiff's January 21, 2020 SF-95, alleging assaults by other prisoners, was insufficient to exhaust her administrative remedies as to her FTCA claim in Count One because it "made no claim whatsoever that Plaintiff's injuries arose out of a tortious act committed by a federal government employee within the scope of his employment."  (Doc. 34 at 6.)  Defendants cite to cases in other circuits in which courts have dismissed FTCA claims or portions thereof for lack of jurisdiction because the scope of the claims before the court exceeded the stated scope presented to the agency.  *See Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000) (declining jurisdiction over a false arrest claim where the notice of claim before the agency "did not contain so much as a hint about the alleged false arrest or the incident that spawned it"); *Bembenista v. United States*, 866 F.2d 493, 498 (D.C. Cir. 1989) (dismissing medical claims against the Army where the notice of claim "described only the sexual assaults and did not allege that any mis-medication had occurred").

22

23

24

25

26

The Court agrees that Plaintiff's January 17, 2020 SF-95, which only alleges assaults by fellow prisoners without any allegations of involvement by BOP staff, did not place the BOP on notice of Plaintiff's FTCA claim, as currently stated in Count One. Therefore, Plaintiff did not properly exhaust this claim with the federal agency, and the Court will dismiss Plaintiff's FTCA claim in Count One for lack of jurisdiction.

27

28

Defendants also argue that Plaintiff's January 24, 2020 SF-95, alleging Nurse Schuler's denial of pain medication, was insufficient to exhaust her administrative

1  remedies with respect to Plaintiff's FTCA claim in Count Two because it "makes the bare,

2  conclusory claim that the nurse's denial of pain medication injured Plaintiff, without

3  providing any supporting evidence or explanation of any negligence or resulting injury."

4  (Doc. 34 at 6.)

5          These arguments are without merit.  Plaintiff was not required to provide detailed

6  allegations and evidence to the agency, as Defendants argue.  Rather, to satisfy § 2675(a),

7  Plaintiff was required to provide a written statement "sufficiently describing the injury to

8  enable the agency to begin its own investigation" and a sum certain in damages. *Blair*, 304

9  F.3d 861, 868 (9th Cir. 2002).  Here, the agency conducted its own investigation based on

10  Plaintiff's allegations in the SF-95, indicating that Plaintiff met the requirement that she

11  sufficiently describe the injury to permit it to do so.  Plaintiff also included a sum-certain

12  in damages, and she received a final denial letter from the agency, which she attached to

13  her First Amended Complaint.  She therefore met the jurisdictional requirements for filing

14  a notice of claim with the appropriate agency before filing her FTCA claim in this action.

15          Plaintiff's allegations in Count Two also do not go beyond the scope of the alleged

16  denial of pain medications and proper follow-up medical care by BOP staff that Plaintiff

17  alleged in her SF-95.  Unlike in Count One, Plaintiff did not omit allegations of BOP staff's

18  involvement in her injuries; instead, her claimed injuries and the denials of proper

19  medications by BOP staff are consistent with the allegations in her FTCA claim in Count

20  Two.  Accordingly, Plaintiff properly exhausted this claim with the BOP before filing her

21  FTCA claim in Count Two, and the Court will deny Defendants' Motion for Summary

22  Judgment as to this claim.

23          **B.      Count Three: Plaintiff's Constitutional and Privacy Act Claims**

24          Defendants have met their initial burden of showing that Plaintiff had administrative

25  remedies available to her to grieve the alleged wrongful conduct underlying her

26  constitutional and Privacy Act claims in Count Three and failed to exhaust those remedies

27  before filing her claims in this action.  The docket reflects that Plaintiff filed her initial

28  Complaint on February 18, 2020; however, she did not make any allegations against

Defendant von Blanckensee or any Privacy Act claims against the BOP at that time.  (*See* Doc. 1.)  Instead, Plaintiff stated these claims for the first time in her First Amended Complaint, which she filed on July 24, 2020. (*See* Doc. 15 at 7−20.)  Defendants' evidence shows, however, that Plaintiff did not file any grievances related to Defendants' alleged misstatements against her from January 2020 through July 24, 2020, when she filed a BP-9 about these issues the same day she filed her First Amended Complaint.  (Doc. 35-1 (Mitchell Decl.) ¶¶ 15−16; Doc. 35-9 at 3.)[7]  Further, Plaintiff did not receive a response to her BP-9 until September 1, 2020, which post-dates the filing of both her original Complaint and her First Amended Complaint.  On this record, Plaintiff could not have properly exhausted her available administrative remedies before filing her claims in this action, as she was required to do under the PLRA:

> The bottom line is that a prisoner must pursue the prison administrative process as the first and primary forum for redress of grievances.  He may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed.  It would be inconsistent with the objectives of the statute to let him submit his complaint any earlier than that.

*Vaden*, 449 F.3d at 1050.

Based on the above showing, Plaintiff must either produce evidence that she, in fact, exhausted her administrative remedies before filing this action or that "something in h[er] particular case [] made the existing and generally available administrative remedies effectively unavailable to h[er]." *Albino*, 747 F.3d at 1172.

---

[7] Lorri Mitchell's declaration, upon which Defendants rely to show these facts, only provides evidence that Plaintiff did not file any administrative remedies related to her claims in Count Three *after* January 1, 2020.  (*See* Doc. 35-1 (Mitchell Decl.) ¶¶ 14−15.) It is not clear from her declaration why Mitchell chose to start with January 1, 2020 and did not investigate whether Plaintiff had filed any administrative remedies about Defendants' alleged misconduct prior to that date; however, Plaintiff's only specific allegations of Defendants' false statements underlying her claims in Count Three pertain to the March 30, 2020 TEC Memo and transfer request, which arose after January 2020, and Plaintiff has not claimed she filed any administrative remedies for any actions prior to January 2020 that pertain to these particular claims.

In her Response, Plaintiff argues only that "the facts of Claim Three were exhausted over a series of exhausted administrative remedies," and she refers generally to her attached declaration. (Doc. 42 at 6.) In her declaration, she lists three Administrative Remedy I.D. numbers, and she states that "[a]ll three remedy processes contained repeated allegations over a series of submissions addressing the misconduct, discrimination, harassment, retaliation outlined in claim three." (Doc. 42-1 (Pinson Decl.) ¶ 4.)

Defendants have, in their Reply, provided copies of the administrative remedies Plaintiff identifies in her declaration, together with a Supplemental Declaration of Lorri Mitchell addressing these filings. (Doc. 43-2 (Mitchell Supp. Decl.); Docs. 43-3—43-9.) Upon the Court's review, these administrative remedies and their corresponding responses and appeals pertain to (1) Plaintiff's request on September 13, 2018 to have the results of a PREA investigation changed from "unfounded" to "unsubstantiated"; (2) Plaintiff's August 27, 2019 complaint of harassment by another prisoner; and (3) Plaintiff's April 21, 2020 complaint of verbal harassment by a correctional officer. (*See id.*) None of these administrative remedies pertain to or mention Defendant von Blanckensee's false statements about Plaintiff or any allegedly false statements contained in Plaintiff's BOP records. This evidence therefore does not create a genuine issue of material fact that Plaintiff exhausted administrative remedies as to her claims in Count Three, and Plaintiff does not otherwise claim to have exhausted administrative remedies as to her claims in Count Three or maintain that she was somehow prevented from doing so.

In her remaining arguments, Plaintiff argues instead only that Defendants have not met their initial burden of showing she failed to exhaust because (1) Defendants have "cherry picked" which grievances to provide the Court and have otherwise relied solely on a condensed print-out of over 1,000 grievances to make this showing; (2) Defendants erroneously used the date of the original Complaint, not the First Amended Complaint, to argue that Plaintiff failed to exhaust her claims in Count Three, and (3) the declaration of Lorri Mitchell, upon which Defendants rely to set forth Plaintiff's grievance records, is incompetent evidence because it is conclusory and based on hearsay. (Doc. 42 at 6−8.)

These arguments do not change the finding that Plaintiff failed to exhaust. Plaintiff correctly points out that Defendants have produced only some of the actual grievances and responses she filed and received related to her claims in this action and have otherwise relied on a printed list of all of Plaintiff's grievances to show that she failed to exhaust. In this case, however, the printout contains sufficient information to show whether and to what extent Plaintiff pursued her administrative remedies before or after she filed and received responses to her July 24, 2020 and September 4, 2020 BP-9s, complaining about Defendant von Blanckensee's false statement in the TEC memo and other BOP correspondence, and they show only that Plaintiff filed a subsequent BP-10 about these issues on November 23, 2020, four months after she filed her First Amended Complaint. (Doc. 35-8 at 82.) This evidence is sufficient to make an initial showing that Plaintiff did not exhaust her administrative remedies before filing her claims in Count Three.

Additionally, Defendants' focus on whether Plaintiff exhausted her claims in Count Three prior to filing her original Complaint, which did not contain these claims, instead of prior to filing her First Amended Complaint, while incorrect, is immaterial under the facts presented, which show that Plaintiff did not exhaust these claims prior to filing either Complaint. *See Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010) (PLRA's exhaustion requirement satisfied with respect to the new claims asserted for the first time in an amended complaint as long as the plaintiff exhausted those claims before filing the amended complaint). As discussed, the evidence shows only that, on the same day Plaintiff filed her First Amended Complaint, she also filed a BP-9 regarding her claims in Count Three, but she did not wait to receive a response, and there is no evidence she had otherwise been reliably informed that no administrative remedies were available. *See Brown*, 422 F.3d at 935 (a prisoner need not press on to exhaust further levels of review once she has either received all "available" remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available). Plaintiff therefore did not properly exhaust these claims.

Plaintiff's arguments that Lorri Mitchell's declaration is not competent evidence because it is conclusory and contains hearsay are without merit.  The parts of the Mitchell Declaration that relate to the grievances Plaintiff filed regarding her claims in Count Three are supported by attachments, either of Plaintiff's actual filings or the BOP's computer-generated record of Plaintiff's administrative remedies, and are therefore not conclusory. Additionally, the evidence shows that these records were kept in the BOP's SENTRY Computerized Inmate Management System per the BOP's regular practice of tracking all administrative remedies, and Mitchell attests that her attachments in this action are "true and correct copies of official BOP records."  (Doc. 35-1 (Mitchell Decl.) ¶ 1.)  These records are therefore not hearsay and are competent to make an initial showing regarding the administrative remedies Plaintiff filed.  Plaintiff has also not materially disputed any of Defendants' evidence, pointed to any relevant entries in her grievance records that Defendants failed to address, or presented any basis from which to find a genuine issue of material fact that the BOP's proffered records and Mitchell's sworn statements about them are inaccurate.

Because Defendants have met their initial burden of showing that Plaintiff had administrative remedies available to her but did not exhaust those remedies prior to filing her claims in Count Three, and Plaintiff has failed to create a genuine issue of material fact as to this showing, the Court will grant Defendants' Motions for Summary Judgment as to Count Three and will dismiss this Count and Defendants von Blanckensee and the BOP without prejudice based on failure to exhaust.

**VI.   Plaintiff's Motion for Limited Discovery**

The Court construes Plaintiff's Motion for Limited Discovery and Supplemental Briefing as a Motion to File a Sur-Reply.  In it, Plaintiff first argues that she is entitled to additional discovery and briefing regarding the three sets of administrative remedies she claimed to have filed in her Response because Defendants only produced copies of the relevant grievance documents for the first time in their Reply.  (*Id.* at 3−4.)  The Court will deny this request.

1    Defendants were entitled to address in their Reply the arguments Plaintiff made in

2    her Response.  Also, because Plaintiff's arguments relied on administrative remedies

3    Plaintiff only referred to, but did not produce, Defendants were entitled to produce this

4    evidence to demonstrate that it did not substantiate Plaintiff's claims.  As discussed above,

5    the Court has also considered this evidence and determined from its own review that it does

6    not relate to the specific claims Plaintiff makes in Count Three, as Plaintiff claimed.  There

7    is therefore no need for further discovery or briefing on evidence that is irrelevant to

8    Plaintiff's claims in this action.

9    Plaintiff next appears to argue that supplemental briefing is required because, in

10   their presentation of evidence regarding the tort claims Plaintiff filed with the BOP,

11   Defendants "have submitted no evidence relating to Tort Claim No. TRT-WXR-2020-

12   02413," which Plaintiff claims "extensively discussed staff misconduct leading to her

13   injuries prior to the SF-95 in [Count] One but which are inextricably intertwined as they

14   involve a series of events that had not ended when the second assault occurred on Jan. 17,

15   2020." (*Id.* at 4.)

16   Plaintiff's belief that Defendants omitted relevant evidence in their Motion for

17   Summary Judgment is also not a reason to order discovery or additional briefing at this

18   time.  Plaintiff had the opportunity to respond to Defendants' Motion, and she did not argue

19   in her Response that she had filed additional, relevant SF-95s that Defendants had failed to

20   produce; nor did she produce any evidence sufficient to create a genuine issue of material

21   fact that she had filed any prior SF-95s pertaining to the alleged staff misconduct

22   underlying her FTCA claim in Count One.

23   Plaintiff did attach to her First Amended Complaint a copy of a January 17, 2020

24   response letter she received from the BOP, acknowledging receipt of an administrative

25   claim, identified as Claim No. TRT-WXR-2020-2413.  (Doc. 15-3 at 2.)  But Plaintiff did

26   not reference this claim in her Response; nor did she attach a denial letter regarding this

27   claim to either her original Complaint, her First Amended Complaint, or her Response.

28   The BOP's acknowledgment letter also does not contain any information about Plaintiff's

allegations in the underlying SF-95 from which to determine that this claim related, in any way, to Plaintiff's allegations in Count One.  Absent such documentation, Plaintiff's statement that the content of this SF-95 was "inextricably intertwined" with her allegations in Count One is too conclusory to create a genuine issue of fact that she placed the BOP on notice of the alleged tortious conduct of USP-Tucson staff in Count One.  But even assuming that Plaintiff raised the same allegations against USP-Tucson staff in her SF-95 that she alleges in Count One of her First Amended Complaint, this is not enough to show that Plaintiff properly exhausted her FTCA claim.  Six months have not yet elapsed since the BOP acknowledged receipt of this claim, and Plaintiff does not argue or present any evidence that the BOP either sent her a letter denying her claim or that its investigation into this claim is complete.

In summary, Plaintiff has the ultimate burden of showing she properly exhausted her FTCA claim prior to filing this action, and she had the opportunity in her Response to present relevant evidence that would create a genuine issue of material fact as to this showing, but did not do so.  Plaintiff's failure to meet her ultimate burden on summary judgment is not a reason to order further discovery and additional briefing.  Accordingly, her Motion will be denied.

**IT IS ORDERED**:

(1)    Defendants' Motion for Summary Judgment (Doc. 34) is **granted in part and denied in part** as set forth in this Order:

(a)  The Motion is **granted** as to Plaintiff's constitutional and Privacy Act claims against Defendants von Blanckensee and the BOP in Count Three, and these claims and Defendants are **dismissed** without prejudiced for failure to exhaust administrative remedies;

(b)    The Motion is **granted** as to Plaintiff's FTCA claim against the United States in Count One, and this claim is **dismissed** without prejudice for lack of subject-matter jurisdiction;

(c)    The Motion is otherwise **denied**.

(2)     Plaintiff's sole remaining claim in this action is her FTCA claim against Defendant the United States in Count Two.

(3)     Plaintiff's Motion for Limited Discovery and Supplemental Briefing (Doc. 46) is **denied**.

(4)     The temporary stay on discovery in this action is **lifted**.

Dated this 30th day of April, 2021.

Honorable Rosemary Márquez
United States District Judge