GARY M. RESTAINO
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant U.S. Attorney
State Bar No. 12700
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  (520) 620-7300
Email: denise.faulk@usdoj.gov
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson,<br><br>Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>Defendant. | CV 20-00070-TUC-RM<br><br>**STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant United States of America, by and through the attorneys undersigned, files this Statement of Facts in support of Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56.

**A.     Plaintiff Jeremy Pinson**

1.     Plaintiff Jeremy Pinson, Federal Register Number 16267-064, currently is incarcerated at the United States Penitentiary in Coleman, Florida, in service of an aggregate 252-month term of imprisonment for various violations, including 18 U.S.C. § 876, Mailing Threatening Communications; 18 U.S.C. § 1001(a)(2), False Statement; 18 U.S.C. § 876(c), Threat to a Juror; and 18 U.S.C. § 871(a), Threats Against the President.  (Ex. A, Declaration of Jesse Rey, ¶¶ 6, 8, Att. 1, SENTRY Inmate History, p. 1, Att. 2, SENTRY Public Information Inmate Data, pp. 2-3.)

2.     Plaintiff was incarcerated at USP Tucson from February 15, 2018, through December 4, 2020.  (Ex. A, ¶ 7, Att. 1, p. 1.)

**B.      December 16, 2019**

3.      On December 16, 2019, inmate Billy Dugard struck Plaintiff with a closed fist in the dining hall at USP Tucson.  (Ex. A, ¶ 10, Att. 3, Form 583 Report of Incident – December 16, 2019, p. 3.)

4.      Plaintiff was assessed medically and found to have no injuries other than a red ear, which was not swollen.  (Ex. B, Declaration of Dr. Waite, ¶ 5, Att. 1, Selected Medical Records, pp. 1-2 (UNDER SEAL).)

5.      Dugard admitted striking Plaintiff and asserted it was because he was having a bad day because his father had died the week before and Plaintiff had been making disrespectful comments to him.  (Ex. A, ¶ 11, Att. 4, Inmate Investigative Report, p. 4.)

6.      Dugard specifically denied having been paid to strike Plaintiff.  (Ex. A, ¶ 12, Att. 4, p. 4.)

7.      Pinson has claimed Dugard struck her at the behest of inmate Cruze under various theories.  (Ex. A, ¶ 13.)

8.      In an undated hand-written note, Plaintiff asserted that on December 15, 2019, Cruze had threatened an inmate, even if he had to "attack staff to get to" him.  (Ex. A, ¶ 14, Att. 5, Pinson undated note.)

9.      During the investigation of the December 16, 2019, incident, in an interview on December 20, 2019, Plaintiff asserted that her life was in danger from Cruze, along with three other inmates.  (Ex. A, ¶ 15, Att. 4, p. 4.)

10.      The three inmates denied having any issues.  (Ex. A, ¶ 16, Att. 4, p. 5.)

11.      Two different inmates wrote that Cruze had placed a hit on Plaintiff from the SHU.  (Ex. A, ¶ 17, Att. 4, p. 6.)

12.      The investigation could substantiate only that continued animosity existed between Plaintiff and Cruze.  (Ex. A, ¶ 18, Att. 4, p. 7.)

13.      Plaintiff asserted in a letter to the OIA on December 25, 2019, that the incident occurred because she had cooperated with SIS Technician Cristinzio on December 14, 2019, by providing information about Cruze's drug dealing, money transfers and threat

- 2 -

1  against an identified inmate who was not the Plaintiff.  (Ex. A, ¶ 19, Att. 6, OIA-2020-

2  03689, p. 13.)

3       14.     In an SF-95 dated January 12, 2020, Plaintiff asserted that

4            Inmate Shawn Cruze made threats to stab and kill USP Tucson
             inmates on 12-14-19 and I reported it to Lt. Eastwood and SIS Cristinzio.
5            Staff disclosed to Cruze my providing this information resulting in Cruze
             sending a note with an inmate getting out of SHU to an inmate Billy Dugard
             instructing him to physically attack me.  That inmate attacked me in the
6            Dining Hall.

7  (Ex. A, ¶ 20, Att. 7, SF95 12-16-19.)

8       15.     During the investigation into Plaintiff's October 2019 PREA complaint,

9  Plaintiff was interviewed by Lt. Herlich and stated that Cruze was trying to impress another

10  inmate and making threats against Plaintiff for bringing the PREA complaint.  (Ex. A, ¶ 21,

11  Att. 8, Inmate Investigative Report - PREA, p. 3.)

12      16.     Cruze was interviewed as part of the investigation.  (Ex. A, ¶ 22, Att. 8, p. 4.)

13      17.     The PREA suspect was interviewed and stated that he had been buying

14  Plaintiff's medication from Plaintiff while they were housed together.  (Ex. A, ¶ 23, Att. 8,

15  p. 4.)

16      18.     The suspect stated that when Plaintiff had a new cellmate, the suspect started

17  buying Plaintiff's medication from the cellmate.  (Ex. A, ¶ 24, Att. 8, p. 4.)

18      19.     The suspect stated that he paid for the medication, and Plaintiff refused to

19  turn it over.  (Ex. A, ¶ 25, Att. 8, p. 4.)

20      20.     The suspect also stated that Plaintiff had tried to put a hit on him.  (Ex. A,

21  ¶ 26, Att. 8, p. 4.)

22      21.     Inmate kites that appear to have been written by Plaintiff and Cruze support

23  the statements regarding Plaintiff's cellmate selling Plaintiff's medications and Plaintiff or

24  her cellmate having tried to put out a hit.  (Ex. A, ¶ 27, Att. 8, p. 8.)

25      22.     The investigation concluded that the PREA allegation was unsubstantiated

26  and that the animosity between Plaintiff and the suspect stemmed from Plaintiff's failure to

27  uphold a deal involving her selling her medication to the suspect.  (Ex. A, ¶ 28, Att. 8, pp. 8-

28  9.)

23.     None of the witness statements substantiated Plaintiff's claim that Cruze had threatened her.  (Ex. A, ¶ 29, Att. 8, pp. 4-8.)

24.     Cruze was sent to the SHU on December 15, 2019, at 9:21 a.m.  (Ex. A, ¶ 30, Att. 9, SENTRY Inmate History Quarters Cruze, p. 1.)

25.     Plaintiff testified that Cruze was placed in the SHU an hour after she spoke with Cristinzio and that Cruze saw her come out of the Lieutenant's office.  (Ex. C, Plaintiff's Deposition, pp. 42-44.)

26.     Pinson admitted to a visitor that on December 16, 2019, at 2:00 p.m., she was aware that Cruze had sent a kite from the SHU putting a hit on her.  (Ex. A, ¶ 31, Att. 10, Transcript of December 22, 2019, visit between Pinson and Dorothy Chao, pp. 4-6.)

27.     Pinson also stated in a December 16, 2019, statement that she had been warned about the hit at 2:00 p.m. and again at 5:00 p.m. on December 16, 2019.  (Ex. A, ¶ 32, Att. 11, Pinson's December 16, 2019, Statement.)

28.     Instead of reporting the hit to staff or accepting offered bodyguards, Pinson admitted she went to dinner, while planning to go to the lieutenant's office after dinner. (Ex. A, ¶ 33, Att. 10, pp. 5-6.)

**C.        January 17, 2020**

29.     On January 17, 2020, inmate Oberfeldt assaulted Plaintiff on the soccer field. (Ex A, ¶ 34, Att. 12, Form 583 Report of Incident – January 17, 2020, p. 3.)

30.     Plaintiff was assessed medically at the prison and sent to the Emergency Room to rule out facial fractures.  (Ex. B, ¶ 6, Att. 1, pp. 10-12.)

31.     In the Emergency Room, Plaintiff was x-rayed, and no fractures were found. (Ex. B, ¶ 7, Att. 1, p. 31.)

32.     The Emergency Room staff did not provide Plaintiff with a prescription for any painkillers.  (Ex. B, ¶ 8, Att. 1, p. 32; Ex. D, Defendant's Requests for Admissions to Plaintiff, RFA 1.)

33.     The Emergency Room staff instructed Plaintiff to take over-the-counter Tylenol or ibuprofen if needed for pain.  (Ex. B, ¶ 9, Att. 1, p. 32.)

34.    The Emergency Room staff did not indicate that Plaintiff should be admitted to the hospital or otherwise monitored medically.  (Ex. B, ¶ 10, Att. 1, p. 32.)

35.    Plaintiff was provided a handout on head injuries that included:

> For mild head injury, you may be sent home and treatment may include:
>
> Observation.  A responsible adult should stay with you for 24 hours after your injury and check on you often.

(Ex. B, ¶ 11, Att. 1, p. 24.)

36.    Plaintiff returned to USP Tucson at 8:10 p.m. on January 17, 2020.  (Ex. A, ¶ 35, Att. 13, January 17, 2020, Lieutenants Daily Log.)

37.    The pill line had closed five minutes before.  (Ex. A, ¶ 36, Att. 13.)

38.    Inmates in SHU may purchase acetaminophen and ibuprofen from the prison commissary.  (Ex. A, ¶ 37, Att. 14, Memorandum re SHU Standardization, p. 3.)

39.    Plaintiff was aware that she could purchase ibuprofen from the prison commissary.  (Ex. C, p. 99.)

40.    Plaintiff's cellmate obtained ibuprofen from the prison commissary on January 29, 2020.  (Ex. A, ¶ 38, Att. 15, Cellmate Sales Invoice January 29, 2020.)

41.    The same day, instead of purchasing acetaminophen or ibuprofen, Plaintiff purchased Halls SF Honey Lemon, a Legal Envelope and allergy tablets.  (Ex. A, ¶ 39, Att. 16, Plaintiff Sales Invoice January 29, 2020.)

42.    Plaintiff admitted she did not ask her cellmate, an adult with whom she was continually celled, to check on her.  (Ex. C, pp. 90-91.)

43.    On January 18, 2020, the day after she was assaulted, Plaintiff met with a volunteer, Dorothy Chao.  (Ex. A, ¶ 40, Att. 17, Transcript of January 18, 2020, visit between Pinson and Dorothy Chao.)

44.    Plaintiff noted that her nose was painful and swollen on the inside.  (Ex. A, ¶ 41, Att. 17, pp. 4, 16.)

45.    Plaintiff did not complain about having a concussion, any symptoms of a concussion or lacking medical care or pain medicine.  (Ex. A, ¶ 42, Att. 17.)

46.     Pinson's medical records do not indicate that she requested pain medication from medical staff during the two weeks following January 17, 2020.  (Ex. B, ¶ 12, Att. 1.)

47.     On January 24, 2020, Plaintiff requested a refill of calcium polycarbophil for constipation through the SHU nurse.  (Ex. B, ¶ 13, Att. 1, p. 13.)

48.     It was provided.  (Ex. B, ¶ 14, Att. 1, p. 13.)

**D.      Bureau Policies on Threat Assessments**

49.     No federal statute, policy or regulation sets out the precise steps that must be taken to ensure the safety of a prisoner.  Instead, the program statements, which are based on regulations and statutes, provide that the decisions are left to the discretion and judgment of the Bureau personnel performing threat assessments.  (Ex. A, ¶ 43.)

50.     28 C.F.R. § 541.27 gives explicit discretion to prison staff to evaluate threats by providing that an inmate "may" be placed in SHU as a protection case if, "based on evidence," staff believes his safety may be seriously jeopardized by placement in the general population.  (Ex. A, ¶ 44, Att. 18, Program Statement 5270.10, Special Housing Units, p. 8.)

51.     An inmate may be placed in administrative detention status for protective custody if the inmate is a victim of an assault or is being threatened by other inmates, if the inmate is threatened because he or she is perceived to have provided information or assistance to staff or law enforcement authorities or if the inmate refuses to enter the general population because of concerns for his or her safety.  (Ex. A, ¶ 45, Att. 18, pp. 6-8.)

52.     Whenever an inmate is placed in protective custody, staff conducts an investigation to verify the reason for the placement.  (Ex. A, ¶ 46.)

53.     If the need for protective custody is verified, the inmate will, at the Warden's discretion, remain in such custody or be transferred to an institution where protective custody may not be necessary.  (Ex. A, ¶ 47.)

54.     If the staff investigation fails to verify the need for protective custody, the inmate will be returned to the general population.  (Ex. A, ¶ 48.)

55.     If the inmate refuses to return to general population, the inmate may be subject to disciplinary action.  (Ex. A, ¶ 49.)

1    56.    Investigating staff weigh information from a number of sources in

2  determining the validity of an alleged threat and how to respond to the threat.  (Ex. A, ¶ 50.)

3    57.    Such factors include the source and credibility of the information at the staff

4  members' disposal, the resources available to address credible threats and the rights of

5  inmates at the institution.  (Ex. A, ¶ 51.)

6    58.    Policy does not dictate a particular response; instead it affords the officials

7  discretion to exercise correctional judgment in evaluating and responding to an alleged

8  threat.  (Ex. A, ¶ 52.)

9    RESPECTFULLY SUBMITTED:  January 14, 2022.

10    GARY M. RESTAINO
      United States Attorney
11    District of Arizona

12

13    *s/ Denise Ann Faulk*
      DENISE ANN FAULK
      Assistant U.S. Attorney
14

15

16  Copy of the foregoing served
    *via* U.S. Mail on January 18, 2022, to:
17

18  Jeremy Pinson
    Inmate No. 16267-064
19  U. S. Penitentiary – Coleman II
    P.O. Box 1034
20  Coleman, FL 33521

21  *s/ P. Vavra*
    / MSJ-DTE/MSJ - SOF
22

23

24

25

26

27

28

- 7 -